334 S.E.2d 503 (1985)
NORTH CAROLINA BOARD OF EXAMINERS FOR SPEECH AND LANGUAGE PATHOLOGISTS AND AUDIOLOGISTS
v.
NORTH CAROLINA STATE BOARD OF EDUCATION, A. Craig Phillips, Superintendent of Public Instruction, North Carolina Department of Public Instruction, City of Kinston Board of Education, Cheryl D. Malone, Duane O. Moore, Superintendent of the Kinston City Schools, Macon County Board of Education, Lonnie H. Crawford, Superintendent of Macon County Schools, and Patricia Morgan Cabe.
No. 8510SC16.
Court of Appeals of North Carolina.
October 1, 1985.
*504 Randall, Yeager, Woodson, Jervis & Stout, by John C. Randall, Durham, for plaintiff-appellee.
Atty. Gen. Lacy H. Thornburg by Sp. Deputy Atty. Gen. Edwin M. Speas, Jr., Dept. of Justice, Raleigh, Richard S. Jones, Jr., Franklin, and Morris, Rochelle and Duke by Thomas H. Morris, Kinston, for defendant-appellants.
*505 JOHNSON, Judge.
In construing a statute, we are guided by the primary rule of construction that the intent of the legislature controls. In re Hardy, 294 N.C. 90, 240 S.E.2d 367 (1978). In determining the legislative intent, we must look to the language of the act, its legislative history, and the circumstances surrounding the enactment of the act with an eye towards the evil sought to be remedied. Milk Commission v. Food Stores, 270 N.C. 323, 154 S.E.2d 548 (1967). We must avoid a construction which will defeat or impair the object of a statute, and should give the statute a construction which, when practically applied, will tend to suppress the evil which the legislature sought to avoid. In re Hardy, supra. We must consider and interpret as a whole parts of the same statute dealing with the same subject. Fishing Pier v. Town of Carolina Beach, 274 N.C. 362, 163 S.E.2d 363 (1968).
With these principles of statutory construction in mind, we construe the statute. The intent of the General Assembly and the evil to be avoided are clearly stated in G.S. 90-292:
It is declared to be a policy of the State of North Carolina that, in order to safeguard the public health, safety, and welfare; to protect the public from being misled by incompetent, unscrupulous, and unauthorized persons and from unprofessional conduct on the part of qualified speech and language pathologists and audiologists and to help assure the availability of the highest possible quality speech and language pathology and audiology services to the communicatively handicapped people of this State, it is necessary to provide regulatory authority over persons offering speech and language pathology and audiology services to the public.
It is also clear from the Act that speech and language pathology and audiology are two separate and distinct fields. G.S. 90-294(a) significantly provides: "Licensure shall be granted in either speech and language pathology or audiology independently. A person may be licensed in both areas if he is qualified." (Emphasis added.) This separateness and distinctness is borne out further in the definitions to the Act. "The practice of audiology" is defined as "the application of principles, methods, and procedures of measurement, testing, evaluation, prediction, consultation, counseling, instruction, habilitation or rehabilitation related to hearing and disorders of hearing for the purpose of identifying, preventing, ameliorating, or modifying such disorders and conditions in individuals and/or groups of individuals." G.S. 90-293(6). "The practice of speech and language pathology" is defined as "the application of principles, methods, and procedures for the measurement, testing, evaluation, prediction, counseling, instruction, habilitation, or rehabilitation related to the development and disorders of speech, voice, or language for the purpose of identifying, preventing, ameliorating, or modifying such disorders." G.S. 90-293(7). This distinctness and separateness is borne out even further by the repeated and consistent usage of the disjunctive "or": "speech and language pathology or audiology." See, e.g. 90-293(8)(d); 90-294(a); 90-294(b); 90-294(c)(1); 90-294(c)(2); 90-294(h); 90-295; 90-295(2); 90-295(2)(c); 90-295(2)(d); 90-295(4); 90-297(b); 90-298(b); 90-299; and 90-302(2).
To be eligible for licensing, an applicant must complete, inter alia, thirty semester hours of coursework in courses "that provide information relative to communication disorders and information about and training in evaluation and management of speech, language and hearing disorders. At least 24 of these 30 semester hours must be in courses in the professional area (speech and language pathology or audiology) for which the license is requested, and no less than six semester hours may be in audiology for the license in speech and language pathology or in speech and language pathology for the license in audiology." G.S. 90-295(2)(b). Thus, while the General Assembly has provided for a curriculum which provides exposure to both fields, it has required an applicant to have *506 in-depth training and education in the particular field for which an applicant is seeking licensing to practice, consistent with its aim of providing for the "highest possible quality speech and language pathology services to the communicatively handicapped people of this State." It would thus defeat the legislature's intent if one licensed in one field only were allowed to practice in the other field as the public would not be receiving the "highest possible quality" services.
A fortiori, it follows that the General Assembly did not intend for one certified by the Department of Public Instruction in speech and language pathology to practice audiology as the hearing impaired child would not be receiving the highest possible quality audiological services. The defendant's construction of G.S. 90-294(c)(4) contravenes the legislative intent and must be disregarded. The trial court's construction best follows the legislative intent.
Alternatively, defendants contend that G.S. 90-294(b) prevents the licensing board from exercising any authority over any person holding any certificate from the State Board of Education and employed by a local board of education. G.S. 90-294(b) provides in pertinent part: "Nothing in this Article, however, shall be considered to prevent a qualified person licensed in this State under any other law from engaging in the profession for which such person is licensed." G.S. 90-294(b) is not applicable to the present case because it does not come into play unless one is being prevented from engaging in a profession for which one is licensed under another law. Here, if it is assumed arguendo a certificate from the Department of Public Instruction is a license, defendants Malone and Cabe have not been prevented from engaging in the practice of speech and language pathology.
Defendants also contend that summary judgment for plaintiff was improper because there is an issue of fact as to whether defendants Malone and Cabe were engaged in the practice of audiology. Defendants, however, stipulated that they were engaged in the practice of audiology. This contention is without merit.
For the foregoing reasons, we find no error in the trial court's findings and conclusions. The court's judgment is
Affirmed.
EAGLES and PARKER, JJ., concur.