REDEVELOPMENT COMMISSION OF THE CITY OF GREENVILLE, PETITIONER v. UNCO, INCORPORATED; SAM B. UNDERWOOD AND WIFE, ALMA W. UNDERWOOD; WACHOVIA BANK AND TRUST COMPANY, EXECUTOR OF THE ESTATE OF W. H. WOOLARD; COUNTY OF PITT; AND THE CITY OF GREEN-VILLE, RESPONDENTS

No. 733SC794

(Filed 20 November 1974)

1. **Eminent Domain § 7— urban redevelopment plan — condemnation of publicly owned land**

    Though more than half of a parcel of land which petitioner sought to have condemned for an urban renewal project was already in public ownership, as were three of the six buildings on the land, appellants cannot contend that there was no statutory authority for the present proceeding to condemn their land which was included in the parcel, since the Urban Redevelopment Law specifically provides that publicly owned property may be acquired by condemnation in furtherance of an urban renewal project when the owning public body gives its consent. Former G.S. 160-465.

2. **Eminent Domain § 7— urban redevelopment plan — statutory standards followed**

    The Redevelopment Commission and the City Council of the City of Greenville did not act arbitrarily or capriciously in adopting and approving the plan of redevelopment or the amendment to include the parcel of which appellants' land was a part where (1) the Commission acted under express statutory authority to cooperate with any government or municipality, including conveying real property to the municipality, (2) the elaborate procedure detailed by statute whereby an urban redevelopment plan is formulated, reviewed, and approved was carefully adhered to both when the plan was originally approved and when it was amended, and (3) there was sufficient evidence to support the trial court's finding that the parcel of land in question

Redevelopment Comm. v. Unco, Inc.

was a blighted area within the meaning of the statute, even though there was evidence that appellants' lot and building located within that parcel were in good condition.

3. **Rules of Civil Procedure § 41— motion to dismiss at close of evidence — consideration on appeal waived by subsequent introduction of evidence**

By introducing evidence, respondents waived the right to have reviewed on appeal the question whether their motion for involuntary dismissal under Rule 41(b) made at the close of petitioner's evidence was erroneously denied.

4. **Appeal and Error § 30— admission and exclusion of evidence — sufficiency of assignments of error**

Assignments of error to the exclusion and admission of evidence which did not show specifically what question appellants intended to present for consideration by the court on appeal without the necessity of going beyond the assignments themselves were ineffectual to bring up for review any of the trial court's rulings admitting or excluding evidence.

APPEAL by respondents from judgment dated 10 May 1973 entered by *Tillery, Judge,* after hearing at the 26 February 1973 Session of Superior Court held in PITT County.

Special proceeding to condemn land for an urban renewal project. Prior to 1966 the Greenville City Council approved the Shore Drive Redevelopment Project, an urban renewal plan formulated by the City's Redevelopment Commission and certified by the City's Planning and Zoning Commission under the provisions of the North Carolina Urban Redevelopment Law, G.S. 160-454 et seq. (now G.S. 160A-500 et seq.). The plan designated as a "blighted area" a portion of downtown Greenville bounded on the north by Tar River and on the south by Second Street. No question is raised on this appeal concerning any land in the project as originally approved.

On 28 December 1966 the City Council adopted an amended plan which added certain areas to the project. One of these, identified as Parcel 13, contains the property which is the subject matter of the present litigation. Parcel 13 consists of approximately the northern half of a city block and is bounded on the north by Second Street, on the south by Courthouse Lane, on the east by Evans Street, and on the west by Washington Street. The southern half of the block is occupied by the Pitt County Courthouse. On 28 December 1966 Parcel 13 contained six structures: A building formerly used as a Catholic Church, the National Guard Armory, the Edwards Building, the Dudley house, the Buck house, and the building owned by respondent Unco,

Incorporated, which is the subject of this litigation. In 1966 Pitt County held title to the Edwards Building and the Buck house and, with the City of Greenville, the Armory (subject to the rights of the State of North Carolina) ; the other three structures were privately owned. Unco's property, a lot fronting 39 feet on the north side of Courthouse Lane across from the Courthouse and having a depth of 85 feet, contained a small frame house which had been converted in 1957 into an office building which was leased to and occupied by respondent Sam B. Underwood as his law office.

Prior to adoption of the amended plan, the Redevelopment Commission and Pitt County entered into an agreement dated 24 September 1965 whereby, among other things, the Redevelopment Commission agreed to convey, if acquired, Parcel 13 to the County. This agreement was subsequently incorporated into a second agreement dated 16 February 1967 between the Commission, the City of Greenville, and the County, whereby the Commission agreed to acquire and clear all of Parcel 13 and to resell the same to Pitt County, and the County agreed to use the property in accordance with plans and specifications conforming with the urban renewal plan for centralizing the County offices and for parking.

After an unsuccessful effort to purchase the Unco property, the Revedelopment Commission commenced the present proceeding on 31 July 1969 by filing a petition for condemnation directed solely to the Unco property. (The Commission subsequently acquired by purchase and conveyed to the County all other properties in Parcel 13.) Respondents filed answer in which they denied the Redevelopment Commission's right to obtain the property by eminent domain, alleging that the inclusion of the Unco property in the 1966 amendment to the urban renewal plan was unconstitutionally arbitrary and capricious, and that, by virtue of the 1965 and 1967 agreements between the Commission and Pitt County, the County was attempting to exercise indirectly a legislatively unauthorized power of eminent domain.

The Clerk appointed Commissioners, who valued the Unco property at $39,600.00, and by order dated 8 April 1971 the Clerk confirmed the Commissioners' award. Upon appeal to the Superior Court, the matter was heard de novo by the Judge upon stipulations entered into by the parties and upon evidence presented. Among other matters, the parties stipulated that the

fair market value of the Unco property was $39,600.00, which sum the Redevelopment Commission paid into court, and it was further stipulated that the Commission had adequate funds on hand to complete the Shore Drive Redevelopment Project. Following the hearing, the Judge entered judgment making findings of fact, conclusions of law, and adjudging that the Redevelopment Commission was entitled to acquire and did acquire title to the Unco property by eminent domain and awarding respondents $39,600.00 with interest from the date of taking. Respondents Unco, Incorporated, and Sam B. Underwood and wife, appealed.

*Harrell & Mattox by Fred T. Mattox for petitioner appellee.*

*Sam B. Underwood, Jr., for respondent appellant Unco, Incorporated.*

*Everett & Cheatham by C. W. Everett for respondent appellants, Sam B. Underwood, Jr., and wife.*

PARKER, Judge.

At the outset we note that the Urban Redevelopment Law, which formerly appeared as Subchapter VII of Chapter 160 of the General Statutes, was transferred by Sec. 75 of Chap. 426 of the 1973 Session Laws effective 10 May 1973 to G.S. Chap. 160A and now appears therein as a new Article 22, and is renumbered G.S. 160A-500 to 527. In order to conform with the citations in the judgment appealed from and the briefs, statutory references in this opinion will be made to the old section numbers.

[1] Appellants first contend that because three of the six structures and more than one-half of the land area in Parcel 13 were already in public ownership, there was no statutory authority under the Urban Redevelopment Law for the present proceeding. However, G.S. 160-465, the section of the Urban Redevelopment Law which deals specifically with eminent domain proceedings, contains the following:

"If any of the real property in the redevelopment area which is to be acquired has, prior to such acquisition, been devoted to another public use, it may, nevertheless, be acquired by condemnation; provided, that no real property belonging to any municipality or county or to the State, may be acquired without its consent."

In view of this express statutory recognition that publicly owned property may be acquired by condemnation in furtherance of an urban renewal project when the owning public body gives its consent, appellants' first contention is overruled.

[2]  Appellants next contend that the trial court erred in finding as a fact that the Redevelopment Commission and the City Council of the City of Greenville did not act arbitrarily or capriciously in adopting and approving the plan of redevelopment or the amendment to include Parcel 13. In support of this contention, appellants have assembled in their brief from the mass of testimony and exhibits included in this case's voluminous record the evidence relating to a series of discussions and transactions between 1962 and 1971 among various Redevelopment Commission, County, City, and Federal representatives which appellants argue demonstrates that Parcel 13 was incorporated into the redevelopment project without due consideration of the valid objectives of urban renewal. In answer to this contention, we first touch upon three statutory and factual aspects of this case.

First, we note that the Redevelopment Commission had express statutory power "[t]o cooperate with any government or municipality . . . ," G.S. 160-462(2), and "[t]o act as agent of the State or federal government or any of its instrumentalities or agencies for the public purposes set out in this Article." G.S. 160-462(3). Furthermore, G.S. 160-464(e)(3) expressly provides:

"In carrying out a redevelopment project, the commission may:

*    *    *    *    *

"(3) With or without consideration and at private sale convey to the municipality, county or other appropriate public body such real property as, in accordance with the redevelopment plan, is to be used for parks, schools, public buildings, facilities or other public purposes."

Second, the record amply indicates that the elaborate procedure detailed by G.S. 160-463 whereby an urban redevelopment plan is formulated, reviewed, and approved, was carefully adhered to in this case both when the Redevelopment Plan here involved was originally approved and when it was modified as authorized by G.S. 160-463(k).

Third, there was sufficient evidence in the record to sustain the trial court's essential findings of fact which support its conclusion that on 28 December 1966 Parcel 13 was "a blighted area within the meaning of G.S. 160-454, et seq." Although there was evidence that the Unco property was in good condition and the court did not find otherwise, ever since the amendment effected by Sec. 2 of Chap. 502 of the 1957 Session Laws, a property which is itself in good condition may still be subject to the power of eminent domain for urban renewal purposes if it is within an area in which the planning commission determines that "at least two thirds of the number of buildings within the area" are of the character described in the statute defining a "blighted area." As pointed out in Annot., 44 A.L.R. 2d 1414 at p. 1439, quoted in *Redevelopment Comm. v. Grimes,* 277 N.C. 634, 640-41, 178 S.E. 2d 345, 349 (1971):

> "It has been repeatedly held or stated that the fact that some of the lands in an area to be redeveloped under redevelopment laws are vacant lands or contain structures in themselves inoffensive or innocuous does not invalidate the taking of the property, or invalidate the statute so permitting, according to the form of the contention in the particular case, usually on the ground that the action was justified as a necessary concomitant of area, as compared to structure-by-structure, rehabilitation."

Viewing the record in the present case against the foregoing statutory framework, we find no error in the trial court's finding that the Redevelopment Commission and the City Council did not act arbitrarily or capriciously in this case. Respondents' contention that the City, the Redevelopment Commission, and Pitt County somehow wrongfully cooperated to use the processes of urban renewal to accomplish a result primarily of benefit to the County and which it could not have otherwise achieved, is simply beside the point, where the applicable statutes not only authorize but direct such cooperation and where, as here, the record discloses that the stated purposes of urban renewal were at the same time being also accomplished.

[3] Respondents' next contention, that the trial court erred in denying their motion for involuntary dismissal made under Rule 41(b) at the close of petitioner's evidence, is not properly before us for review. After their motion was denied, respondents, as they had a right to do, elected to introduce evidence. By so doing, they waived the right to have reviewed on appeal

the question whether their motion made at the close of petitioner's evidence was erroneously denied. 5 Moore's Federal Practice, ¶ 41.13[1], p. 1149. "The significance of this is that on appeal from a final judgment the court will look to all of the evidence and not merely that put in as part of the plaintiff's case." Wright and Miller, Federal Practice and Procedure, § 2371, p. 221. See *Helms v. Rea,* 282 N.C. 610, 194 S.E. 2d 1 (1973).

[4] Appellants' next contention is that "[t]he trial court erred in the exclusion and admission of certain evidence during the course of the trial." This is based on assignments of error III and IV, which are as follows:

> "III. The actions of the Court, as set out in EXCEPTIONS 9 (R p 150), 9a (R p    ), 10 (R p 161-2), and 11 (R p 170) in allowing certain testimony and excluding other testimony.

> "IV. The actions of the Court, as set out in EXCEPTIONS 11a (R p 205), 12 (R p 211), 13 (R p 212) and 14 (R p 213), in excluding certain testimony of H. R. Gray, County Manager of Pitt County (and County Auditor of Pitt County during some of the dates in question)."

Neither of these assignments shows specifically what question is intended to be presented for consideration by this Court without the necessity of going beyond the assignment of error itself. Therefore, these assignments of error do no conform to the requirements of the Rules of Practice of this Court or of our Supreme Court. *In re Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59 (1966) ; *Lancaster v. Smith,* 13 N.C. App. 129, 185 S.E. 2d 319 (1971). Accordingly, assignments of error III and IV are ineffectual to bring up for appellant review any of the trial court's rulings admitting or excluding evidence.

We have carefully reviewed appellants' remaining contentions, that the trial court erred in its findings of fact and in failing to grant respondents' motion for dismissal and for judgment in their favor made at the close of all of the evidence, and find them without merit. There was evidence to support the trial court's crucial findings of fact and these in turn support the conclusions of law and the judgment rendered. In this connection we call attention to the following language, relative to the limited role of judicial review in cases such as this, from the Annotation in 44 A.L.R. 2d 1414, which was quoted with

Davis v. Enterprises and Davis v. Mobile Homes

approval in the opinion in *Redevelopment Comm. v. Grimes, supra* at 640:

> "In determining whether a particular area may legally be selected for redevelopment, either under the terms of the statute, or in terms of the requirement that the particular project serve a 'public use,' the role of judicial review is severally limited by the rule that the finding of the redevelopment authority, or similar administrative agency, that a particular area is 'blighted,' that redevelopment serves a 'public use,' or the like, is not generally reviewable, unless fraudulent or capricious, or, in some instances, unless the evidence against the finding is overwhelming."

As above noted, the trial court expressly found that the Redevelopment Commission and the City Council of the City of Greenville did not act arbitrarily or capriciously in this case, and the record supports that finding.

The judgment appealed from is

Affirmed.

Judges BRITT and BALEY concur.